IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| BILLY RAY WALLACE, #0299484 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv481 |
| DIRECTOR, TDCJ-CID | § | |

<u>REPORT AND RECOMMENDATION</u>
<u>OF THE UNITED STATES MAGISTRATE JUDGE</u>

Petitioner Billy Ray Wallace, a prisoner currently confined within the Texas Department of Criminal Justice (TDCJ), filed this habeas action challenging an adverse parole determination. The case was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the petition.

For reasons explained below, the Court recommends that the petition be denied, the case dismissed with prejudice, and that Petitioner be denied a certificate of appealability *sua sponte*.

**I. Procedural History and Petitioner's Petition**

Wallace explains that he is serving a 1981 sentence stemming from Delta County, Texas, in case number 5750. Online TDCJ records show that he was sentenced on December 10, 1981, to life imprisonment for one count of capital murder. The records also indicate that Wallace became eligible for parole in September 2000; the parole board most recently denied parole on February 1, 2022—and set his next review for February 2025.

In his petitions, (Dkt. ##4, 7), Wallace maintains that the board rescinded parole "approval, revote, and returning with denial" without affording him an opportunity to contest new protest letters that "caused the rescinding of approval, the revote, and subsequent denial of parole." Dkt. #4, pg. 3. He explains that he was granted parole in 2013, which was then rescinded in 2014, (Dkt.

1

#7, pg. 6). He argues that the board continued using the notion that he is a "continued threat to the public" without an evaluation from a psychologist or affirmative finding that he is a current and continuous threat to the public. He notes that he is 82-years old and has been denied parole for a total of seven times since 2000. *Id*. at pg. 11.

Wallace further asserts that he was denied due process when he was granted parole, only to have it rescinded without a hearing. He states that he was not permitted to participate in the hearing to rescind, withdraw, and then deny parole. Furthermore, Wallace insists that his due process rights were violated because the Board "continues to use false information to deny him parole"—in the form of trickery and deceptive protest letters. He argues that the prosecutor "tricked" individuals into signing protest letters against him so that he will never be granted parole.

He also contends that he has been repeatedly denied due process since January 2014—suffering numerous parole denials—without the Board considering his "exemplary institutionalized adjustment and rehabilitation accomplishments," (Dkt. #4, pg. 18). He insists that the Board relies on his offense to deny parole, but "has not shown or displayed any predispositions to commit criminal offenses if released." Wallace seeks reinstatement of the parole approval unless he is afforded a psychological examination.

**II. Standard of Review**

The role of federal courts in reviewing habeas petitions filed by state prisoners is exceedingly narrow. A prisoner seeking federal habeas corpus review must assert a violation of a federal constitutional right; federal relief is unavailable to correct errors of state constitutional, statutory, or procedural law unless a federal issue is also present. *See Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993); *see also Estelle v. McGuire*, 503 F.3d 408, 413 (5th Cir. 2007) ("We first note that 'federal habeas corpus relief does not lie for errors of state law.'") (internal citation

omitted). When reviewing state proceedings, a federal court will not act as a "super state supreme court" to review error under state law. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).

Federal habeas review of state court proceedings is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996. Under AEDPA, which imposed several habeas corpus reforms, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). AEDPA imposes a "highly deferential standard for evaluating state court rulings," which demands that federal courts give state court decisions "the benefit of the doubt." *See Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted); *see also Cardenas v. Stephens*, 820 F.3d 197, 201-02 (5th Cir. 2016) ("Federal review under the AEDPA is therefore highly deferential: The question is not whether we, in our independent judgment, believe that the state court reached the wrong result. Rather, we ask only whether the state court's judgment was so obviously incorrect as to be an objectively unreasonable resolution of the claim."). Given the high deferential standard, a state court's findings of fact are entitled to a presumption of correctness and a petitioner can only overcome that burden through clear and convincing evidence. *Reed v. Quarterman*, 504 F.3d 465, 490 (5th Cir. 2007).

**III. Discussion and Analysis**

There is no constitutional right to parole. It is well-settled that a state prisoner does not have a federal constitutional right to early release from a lawful sentence. *See Greenholtz v.*

3

*Inmates of Neb. Penaland Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Orellena v. Kyle*, 65 F.3d 29, 31-32 (1995); *Pohl v. Livingston*, 241 F. App'x 180, 181 (5th Cir. 2007) ("This court has determined that Texas law does not create a liberty interest in parole that is protected by the Due Process Clause.").

The decision to grant parole or deny parole is discretionary under Texas law, and the Texas parole statutes, both past and present, do not create any protected liberty interest that implicates constitutional considerations. *See Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997); *Allison v. Kyle*, 66 F.3d 71, 74 (5th Cir. 1995). While Wallace may be eligible for parole, the refusal of the Texas Parole Board to grant him parole does not merit federal habeas relief. *See Bell v. Thaler*, 2013 WL 791607 *2 (N.D. Tex. March 1, 2013) ("Therefore, while a petitioner may be eligible for parole, the failure of the Board to grant parole does not merit federal habeas relief."); *see also Williams v. Briscoe*, 641 F.2d 274, 277 (5th Cir. 1981) ("We hold that the Texas Adult Probation, Parole and Mandatory Supervision Law does not create a protectible expectancy of release recognized by the Supreme Court in *Greenholtz*.") (internal citation omitted).

Wallace insists that his Due Process rights have been consistently violated upon the denial of parole without a hearing, evaluations, or his participation. However, the protections of the Due Process Clause are only invoked when State procedures that may produce erroneous results imperil a protected liberty interest. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). Accordingly, "[i]t is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds." *Id*. Contrary to his contentions, Wallace does not have a protected liberty interest in release onto parole—or in the parole procedures.

The crux of Wallace's petition concerns how he was allegedly granted parole, which was subsequently rescinded. He insists that his Due Process rights were violated given the rescission. As mentioned, however, he has no protected liberty interest in parole procedures—which is fatal to his complaints regarding his lack of participation in a hearing, the lack of a psychological evaluation, "falsification" of protest letters, and the Board's reliance on his offense of conviction.

Moreover, the United States Court of Appeals for the Fifth Circuit addressed a similar issue in *Sexton v. Wise*, 494 F.2d 1176 (5th Cir. 1974). There, the parole authority determined on November 7, 1972, that the petitioner would be released on parole on November 16. *Id.* at 1177. But the board learned on November 13 of a previous rule violation by the petitioner and rescinded the grant of parole without giving the petitioner any formal notice or opportunity to be heard. *Id.* at 1177–78 The Fifth Circuit rejected the argument that the rescission violated the petitioner's constitutional rights:

> Since Sexton was never officially paroled, and the actions taken did not amount to a revocation, we do not reach the issue of the constitutionality of the November 28, 1972 meeting conducted by the Youth Correction Division of the Board of Parole. Until a parole is finalized, no constitutional protections associated with a parole revocation embrace the intended parolee.
>
> It is well settled that eligibility for parole is within the wide latitude of discretion vested in the Board of Parole. *Thompkins v. U.S. Board of Parole*, 5 Cir., 1970, 427 F.2d 222; *United States v. Frederick*, 3 Cir., 1968, 405 F.2d 129; *Walker v. Taylor*, 10 Cir., 1964, 338 F.2d 945. The Regulations for paroling a prisoner sentenced under the Youth Correction Act, supra, provide that the Youth Correction Division may conditionally release a prisoner after reasonable notice to the Director of the Bureau of Prisons. (28 C.F.R. § 2.6). Notice of a future date for release on parole, however, does not bestow upon the intended parolee a right to that parole prior to final physical release by the Bureau of Prisons. Before a prisoner can be officially paroled, the final step of physical release must be taken.
>
> While a prisoner remains in the custody of prison officials, he continues to be subjected to their supervision and the wide discretion of the Board of Parole. The Regulations are clear that until final physical release occurs, the Board does not relinquish its broad discretionary powers to rescind any future parole.

5

*Id.* at 1178. As in *Sexton*, here, Wallace was never officially paroled; the granting of parole was merely rescinded. No constitutional protections, therefore, are triggered.

Although the Fifth Circuit in *Sexton* dealt with federal parole regulations, the United States District Court for the Southern District of Texas has found that its reasoning applies to cases arising in Texas, whose parole statute likewise "does not create a constitutionally protected expectancy of release." *Reneau v. Dretke*, 2005 WL 2488421, at *1 (S.D. Tex. Oct. 6, 2005). Reneau, like Wallace here, "challenge[d] the decision of the Texas Board of Pardons and Paroles (Board) to rescind his previously granted parole release," complaining that "the Board gave him a parole release date and they later rescinded the date without proper and fair notice." *Id.* The district court found that Reneau failed to state a claim for which habeas relief could be granted, because "the process of obtaining parole had never reached completion and the due process protections of *Morrisey v. Brewer* [408 U.S. 471 (1972)], applicable to revocation, were not applicable." *Id.* (quoting *Sexton*, 494 F.2d at 1177.) Accordingly, Wallace had no liberty interest in parole that triggered any due process protections despite the conditional grant of parole.

Here, Wallace has not identified a constitutional violation in the denial of his release on parole, which is fatal to his habeas petition. "Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States.'" *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000) (quoting *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995)).

**IV. Certificate of Appealability**

A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, under 28 U.S.C. § 2253(c)(1), he must first obtain a certificate of appealability ("COA")

from a circuit justice or judge. *Id.* Although Petitioner has not yet filed a notice of appeal, the court may address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner need only show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The Supreme Court recently emphasized that the COA inquiry "is not coextensive with merits analysis" and "should be decided without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck*, 137 S. Ct. 773 (quoting *Miller-El*, 537 U.S. at 336). Moreover, "[w]hen the district court denied relief on procedural grounds, the petitioner seeking a COA must further show that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rhoades v. Davis*, 852 F.3d 422, 427 (5th Cir. 2017) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 140-41 (2012)).

Here, Wallace failed to present a substantial showing of a denial of a constitutional right or that the issues he has presented are debatable among jurists of reason. He also failed to demonstrate that a court could resolve the issues in a different manner or that questions exist warranting further proceedings. Accordingly, he is not entitled to a certificate of appealability.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the above-styled petition for a writ of habeas corpus be denied and that the case be dismissed, with prejudice. It is further recommended that Petitioner Wallace be denied a certificate of appealability *sua sponte*.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 23rd day of May, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE